11283

WALKER *ET AL.* v. BENNETT *ET AL.,* TRUSTEES

(118 S. E., 779)

1. Statutes—Act Consolidating School Districts Held Not Within Inhibition of Special or Local Law Incorporating Districts; "Consolidation"; "Incorporation."—Act February 17, 1923, which attempts to incorporate a new school district, but the necessary result of which was consolidation of five existing districts into one, does not violate Const. Art. 3, § 34, Subd. 4, prohibiting the enactment of any local or special laws incorporating school districts as consolidation is not incorporation, and this Act may be considered as an amendment to Civ. Code, 1912, § 1738, authorizing County Boards of Education to consolidate school districts.

2. STATUTES—TITLE OF ACT CONSOLIDATING SCHOOL DISTRICTS HELD TO
   SUFFICIENTLY STATE SUBJECT-MATTER.—The title of Act February
   17, 1923, consolidating five existing school districts into one, de-
   claring its purpose to be the establishment of a new school district,
   does not violate Const. Art. 3, § 17, requiring every act to relate to
   one subject, which must be expressed in the title.

3. SCHOOLS AND SCHOOL DISTRICTS—ON CONSOLIDATION, DEBTS OF EACH
   DISTRICT BECOME OBLIGATIONS OF CONSOLIDATED DISTRICT, AND AS RE-
   SPECTS LIMITATION OF INDEBTEDNESS IT IS IMMATERIAL WHAT THE IN-
   DEBTEDNESS OF A CONSTITUENT DISTRICT IS.—Where several districts
   are consolidated, the fiscal authority of the constituent districts is
   destroyed, and the debts of each become obligations of the con-
   solidated district, so that it is immaterial as respects the limitation
   of Const. Art. 10, § 5, what the indebtedness of a constituent dis-
   trict is, as their debt becomes the debt of the consolidated district,
   and is payable out of its assets.

Original proceeding for a permanent injunction in the original jurisdiction of the Supreme Court, by A. C. Walker and others against T. M. Bennett and others, Trustees of Parker School District No. 8A. Greenville County. Injunction denied.

*Messrs. Hodges & Leatherwood* for plaintiffs.

*Messrs. Martin & Blythe,* for defendants, cite: *Presumption in favor of validity of Legislative Act:* 12 C. J., 787–788, 791, 793; 84 S. C., 552; 82 S. C., 352. *Art. B., Section 34, Constitution* 1895. *Prohibits incorporation of new school districts but not consolidation:* 1 Civ. Code 1912, Section 1738; 77 S. C., 351; 95 S. C., 104; 105 S. C., 348. *Title sufficient:* 103 S. C., 10; 106 S. C., 159.

July 26, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is a proceeding, in the original jurisdiction of the Court, instituted by the plaintiffs, as taxpayers and residents of the County of Greenville and of the territory embraced within the limits of the so-called Parker School District No. 8A, for an injunction, restraining the defendants as trustees of said school district, from issuing and

selling a certain issue of school bonds in the amount of $300,000.00.

Prior to the pasage of Act February 17, 1923, hereinafter more particularly defined, there were, in the territory just outside the limits of the City of Greenville, the following separate school districts: Union No. 8A; Sam-Poe No. 8B; Mills-Dunean No. 8C; West Greenville No. 8D, and City View No. 8E.

Extensive plans have been developed by the citizens interested for the improvement of the school facilities in this territory; they involve the consolidation of the five school districts named into one school district, with a centralized control.

Accordingly, on February 17, 1923, an Act was passed by the General Assembly, purporting to effect the desired consolidation, incorporating the new school district and defining the powers and duties of the Board of Trustees, among which are the powers of school districts generally, under the statute, to issue bonds.

After the approval of the Act referred to, the Board of Trustees, upon petition duly signed by one-third of the qualified electors and one-third of the resident freeholders within said territory, proceeded to order an election upon the question of the issuance of bonds in the sum of $300,-000.00 for school purposes; at that election the votes cast were 231 for, and 6 against, the bonds. Thereafter the result of the election was declared and the bonds authorized to be issued. After advertisement for bids, that of Stacy and Braun of Toledo, Ohio, was accepted for par, plus a premium of $1,800.00.

Before the bonds were issued or delivered, this action was instituted. The objections urged by the plaintiffs to the validity of the proposed issue of bonds are:

(1) That the Act of 1923 is an attempt to incorporate a school district in contravention of the Constitution, Art. 3, § 34, Subdivision 4.

(2) That the Act is in contravention of the Constitution, Article 3, § 17, which requires that every Act shall relate to but one subject, and that shall be expressed in the title.

(3) That there are now outstanding against School District 8E, one of the constituent districts, bonds to the amount of $24,000.00; that that is the debt of the constituent district and not of the consolidated district; and that the issue of the new bonds will create an excess of the debt of School District 8E, over 15 per centum, and over 8 per centum of the assessed valuation of its property, in contravention of the Constitution, Article 10, § 5.

As to the first objection: The constitutional provision is as follows:

"The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following purposes, to wit:

"I. * * *

"II. * * *

"III. * * *

"IV. To incorporate School Districts."

The main object of the Act of 1923, as plainly appears upon its face, was to consolidate the five school districts into one. The Constitution contains no delegation of power to the General Assembly in reference to the consolidation of school districts and no limitation of its power in reference thereto; and, consequently, its powers in regard thereto are referable to the reservoir of general powers, except when limited by the Constitution. Consolidation is not incorporation, and an inhibition against incorporation should not apply to consolidation.

Section 1738 of Volume 1, Code of Laws A. D. 1912, authorizes County Boards of Education to consolidate school districts upon certain conditions, and the Act of 1923 specifically directing the consolidation of these particular school districts, may be regarded as an amendment to Sec-

tion 1738, a special provision in a general law, permitted by the Constitution.

The fact that the Act of 1923 attempts to incorporate the new district does not at all make the Act one of incorporation, for the necessary result of a consolidation, either by the County Board of Education, as authorized by Section 1738, or by the Act of 1923, is the incorporation of the new district as consolidated. So much of the Act of 1923 as purports to incorporate the new district is, therefore, superfluous.

There is certainly as much difference between incorporation and consolidation, as there is between incorporation and amendment, and it has been held in the case of *State v. McCaw,* 77 S. C., 351; 58 S. E., 145, that an amendment to the Act incorporating a school district does not come within the inhibition of the Constitution. It appears in that case that the School District of Yorkville was created by a special Act in December, 1888, prior to the Constitution of 1895 containing the inhibition under discussion. In February, 1907, an Act (25 St. at Large, p. 731), was passed providing for a material extension of the school district and that the new district "be declared a separate school district, and to be known as the School District of Yorkville." Objection was made that the Act was violative of the constitutional provision in question, but the Court held:

"Nor is it repugnant to Subdivision V [now IV] of that section, as the statute does not incorporate the school district, but is, in effect, only an amendment of a previous statute of incorporation."

So in the case of *Burriss v. Brock,* 95 S. C., 104; 79 S. E., 193. The Act of 1895 (prior to the Constitution) created a special school district of the City of Anderson. The Act of 1913 enlarged it by annexing certain adjacent territory beyond the corporate limits, and provided for the issuance of bonds. The same objection to the Act was interposed, but the Court, in line with the *McCaw Case* and

*State v. Brock,* 66 S. C., 357; 44 S. E., 931, held that the amendment did not constitute the incorporation of a new school district, although, as a matter of fact, a new district was created; the creation of the new district being simply an incident of the valid exercise of the legislative power of amendment.

In the case of *Columbia v. Smith,* 105 S. C., 348; 89 S. E., 1028, the Court quotes with approval the following from the *McCaw Case:*

"A statute, therefore, which could be enacted as a special provision in a general law will not be declared unconstitutional merely because it is in form a separate Act, but will be regarded as an amendment of the general law upon the subject."

And in *Grocery Company v. Burnet,* 61 S. C., 205; 39 S. E., 381; 58 L. R. A., 687, it is said:

"If it be competent for the Legislature, while enacting a general law, to enact special provisions therein, it is also competent to enact similar special provisions."

So here, Section 1738 is a general law covering the matter of consolidation, and the Act of 1923, although a separate Act applying to this particular school district, may, in the matter of their consolidation, be deemed an amendment to Section 1738.

As to the second objection: The title of the Act declares the purpose to be the establishment of a new school district. One recognized method of establishing a new district is by the consolidation of two or more districts, and for this ample and specific provision is made in the body of the Act. As is said in *Lillard v. Melton,* 103 S. C., 10; 87 S. E., 421:

"When the general subject is expressed in the title of a statute, any details of legislation as to means, methods or instrumentalities to facilitate the accomplishment of the general purpose and germane to it, may be embraced in the

body of the Act without violating Article III, § 17, of the State Constitution."

See, also, *Furman v. Willimon,* 105 S. C., 159; 90 S. E., 700. *Brownlee v. Brock,* 107 S. C., 230; 92 S. E., 477.

As to the third objection: It is conceded, without going into the details of the figures, that, if the outstanding bonded debt of School District 8E ($24,000.00) continues after the consolidation to be the debt of that school district, the proposed issue of bonds will exceed the constitutional limit, so far as this district is concerned; but otherwise not.

When the consolidation district was formed, the inevitable result of the formation was to destroy the existence of the five constituent school districts in so far as owning separate property and owing separate debts was concerned. The purpose of the Act was to unite the territory under one school management, which necessarily required that management to exercise control of all the properties of the constituent districts and make the consolidated district the unit for the purpose of owning property, holding assets, paying liabilities and providing unified system of instruction. In 24 R. C. L., page 567, the rule is stated:

"In case of the abolition of the old district and the formation of new districts out of its territory, the new districts are deemed the successors of the old, and as such liable for all its debts and entitled to all of its property."

The above rule is stated practically the same way in 35 Cyc., 851.

It was held in *Folsom v. Ninety Six Township,* 159 U. S., 611; 16 Sup. Ct., 174; 40 L. Ed., 278, that, where a township had issued bonds for the purpose of procuring a railroad through the territory, such township could not be destroyed by a constitutional provision and thus escape payment of its bonded debt. This should be true in morals as well as in law, but the principle does not apply where the abolition is affected by a consolidation, for in such

case the consolidated district takes over the assets and becomes liable for the bonded debts of the constituent districts.

It was upon this principle that *Folsom v. Greenwood County* (C. C. A. 4th Circuit), 137 Fed., 449; 69 C. C. A., 473, was decided. In that case, after the original township had been abolished, it afterwards became incorporated into the territory contained in Greenwood County, and the Court held that it was the duty of the officers of Greenwood County to levy and collect taxes for the payment of bonds of such township.

In *District of Columbia v. Cluss,* 103 U. S., 705; 26 L. Ed., 455, it was held that, where an Act uniting a school district into a municipal corporation was passed, the new corporation succeeded to the property of the former school district and also succeeded to its liabilities.

A leading case upon the principle under consideration is *Town of Mt. Pleasant v. Beckwith,* 100 U. S., 514; 25 L. Ed., 699. In the syllabus it is said:

"Where one town is merged in two others by a legislative Act, unless the Legislature regulate the rights and duties of the two latter, they succeed to all the public property and immunities of the extinguished municipality, and they become liable for all the debts previously contracted by it."

In this case the principle was applied to the consolidation of municipalities, but the same principle applies to the consolidation of school districts.

In *Brewis v. City of Duluth* (C. C.) 13 Fed., 334, the Court held:

"When an old corporation is dissolved and a new one created, substantially embracing the same territory, the new municipality becomes liable, as successor, for the debts of the old, although the respective charters differ, and consequently an action at law will lie.

"Cities, towns, and counties are mere political subdivisions of the State, and are at all times subject to legislative

control, and may be divided, subdivided, or abolished. It is competent for the Legislature, in making such subdivisions, to apportion such obligations of the divided territory, and, in the absence of such legislative apportionment, the old municipality, if still existing, must bear the entire debt; but if a municipality has been abolished, and its territory divided among other municipalities, the creditor may pursue his demand against the latter for their equitable portions thereof."

In *Taylor v. Pine Grove Tp.* (C. C.) 132 Fed., 565, the Court held:

"Where, after the issuance of bonds by a township, all but a small part of it was included in a new county and its boundaries changed so as to include new territory, the taxable property of the old and new townships, however, being substantially the same, the new township became the legal successor of the old, and all the territory and property therein became liable for the payment of the bonds, in the absence of any provision in the legislative Act adding the new territory exempting it from such liability."

The same decision was made in *Susong v. Cokesbury Township* (C. C. D. S. C.), 132 Fed., 567.

The principle, as stated in the above cases, was recognized by this Court in the case of *Black v. Fishburne,* 84 S. C., 451; 66 S. E., 681. In this case in an opinion written by Mr. Justice Woods, it is said:

"It has been often held that, where the Legislature authorized the creation of a municipal debt, and, after such debt had been made, absolutely repeals the charter, and then creates of substantially the same territory what purports to be an entirely new corporation, it will, nevertheless, be presumed that the legisltive intent was to continue the former corporate existence, and that the debt attaches to the new corporation. *Broughton v. Pensacola,* 93 U. S., 266. *Shapleigh v. San Angelo,* 167 U. S., 646. *Mt. Pleasant v.*

*Beckwith,* 100 U. S., 520.   *Dillon on Munic. Corpor.,* §
172.   *Abbott on Munic. Corpor.,* 33.

The cases above cited are those in which municipal corpo-
rations or townships were incorporated into other municipal
corporations or political subdivisions. The following cases
are those where the same principles were applied as to
school districts :

In *Clother v. Maher,* 15 Neb. 1; 16 N. W., 902, there
were two separate school districts, one of which had issued
bonds.   An Act of the Legislature consolidated these two
districts into one under a different name   The Court held
that, upon such consolidation, the new district became in-
vested with all the property rights of the two constituent
districts, and also became liable for the debts of those dis-
tricts, and that a tax for the amount of the bonded indebted-
ness of the constituent districts was properly levied on all
the taxable property within the new district.

In *Coler v. Coppin,* 10 N. D., 86; 85 N. W., 988, it was
held :

"A school township organized under Chapter 44 of the
Laws of 1883, became by such organizations *ipso facto*
liable for the debts of the old districts whose territory
was included in such township."

In *Abler v. School District of St. Joseph,* 141 Mo. App.,
189; 124 S. W., 564, it was held:

"Where one school district goes entirely out of existence
by being annexed to or merged in another, if no arrange-
ments are made respecting the property and liabilities of
the district that ceases to exist, the subsisting district will
be entitled to all the property and answerable for all the lia-
bilities."

The above authorities are conclusive of the question under
consideration.   Upon the consolidation of the districts
by the legislative Act the entity of the districts as such
was destroyed. So far as the fiscal authority of the constit-
uent districts was concerned, that was absolutely destroyed

by the consolidation. The result was, however, not that the debts were not still subsisting obligations, but that they became obligations of the consolidated district, which likewise succeeded to the property of the constituent districts. The result is that the bondholders of the constituent districts have as security for their debts, not the separate property of the old school districts, but the entire property of the consolidated districts. It results from this holding that it is immaterial what the indebtedness of school district 8E is, as that indebtedness becomes the debt of Parker School District, and is payable out of the assets of the entire district.

It follows, from what has been stated above, that the bonds voted are valid obligations of Parker School District, and that the permanent injunction asked for by plaintiff should be denied, and it is so ordered.

Messrs. Justices Watts and Fraser concur.

Mr. Chief Justice Gary did not sit.

Mr. Justice Marion (dissenting): I dissent upon the ground that the Act is, as I think, a palpable infringement of Subdivision 4, § 34, Art. 3, of the Constitution of 1895, prohibiting the General Assembly from enacting a local or special law "to incorporate school districts."

That the Act here in question is a "local or special" Act, and that it "incorporates" a school district, is too obvious to require discussion. With due deference, I think the suggested distinction between "consolidate" and "incorporate" is chimerical. So much of the Act as refers to consolidation is merely descriptive of the territory of the new district, which it is the primal purpose of the Act to erect into a body politic and corporate, with special powers, among which are the powers to govern its affairs through a special board of trustees and to levy through this board taxes in a manner and to an amount not permitted under general law. If such were not the purpose in view and the object to be attained, the Act was an entirely useless piece of legislation. In

either view it is clearly in contravention of the constitutional prohibition, the twofold object of which is (1) To prevent the unnecessary waste of time and money required for the enactment of such useless legislation—that is, of special laws for purposes which could as well be accomplished under a general law, and (2) to prevent the creation of a multiplicity of school districts with special corporate powers, in derogation of that uniformity which is mandatorily prescribed by Subdivision 10 of Section 34, of Article 3.

The case is not ruled by *State v. McCaw,* 77 S. C., 351; 58 S. E., 145, and. *Burriss v. Brock,* 95 S. C., 104; 79 S. E., 193. Those cases involve Acts which were merely amendatory of the special charters of existing graded school districts organized under laws enacted before the adoption of the Constitution of 1895, which charters were expressly protected from repeal under Section 5, Article 11. Being so protected, in view of Subdivisions 2 and 3 of Section 34 of Article 3, which expressly referred to and prohibited the amendment of charters for certain purposes and of the absence of any such prohibition as to amendment in Subdivision 4, it was properly held that the language of Subdivision 4 might not be held to prohibit the amendment by Special Act of the charter of a school district already incorporated under laws passed prior to the adoption of the Constitution. Here an entirely new school district is created and incorporated, with special powers.

The contention that the present Act may be sustained as a special provision in a general law is likewise untenable. A special Act concerning a subject or for a purpose as to which local or special laws are expressly prohibited by Section 34 of Article, may not properly be sustained as a "special provision" in a general law. If the special Act directly infringes one of these express prohibitions, it cannot be saved by construing it as a special provision in a general Act. Against an objection leveled under Subdivision 9

of Section 34, which prescribes that no special law shall be enacted where a general law can be made applicable, a special Act may be sustained as a special provision of a general law, if it does not or would not destroy the general character of the law into which it is written as a special provision. See *State v. Higgins,* 51 S. C., 51; 28 S. E., 15; 38 L. R. A., 561. *Dean v. Spartanburg,* 59 S. C., 110; 37 S. E., 226. *Nance v. Anderson County,* 60 S. C., 501; 39 S. E., 5. *Grocery Company v. Burnet,* 61 S. C., 211; 39 S. E., 381; 58 L. R. A., 687. Certainly, however, a special Act to incorporate a special school district and to endow it with special corporate powers may not, in any view, be sustained as a consistent part of a general law.

For the reasons indicated, I am constrained to dissent.