STATE *EX REL.* WOLFE, ATTY. GEN. v. SANDERS

(110 S. E. 808)

1. PROCESS—ORDER THAT PREVIOUS ORDER OF COURT AND PETITION SHOULD BE REGARDED AS SUMMONS HELD CONCLUSIVE OF OBJECTION THAT NO SUMMONS HAD BEEN SERVED.—Where in an original proceeding in the Supreme Court to determine title to the office of Sheriff, first hearing was postponed on defendant's objection that for want of summons he had not had the time allowed by law for answering, and an order was then entered that a previous order for serving summons and petition on defendant would be regarded as a summons and complaint, in view of Code Civ. Proc. 1912, § 178, prescribing the requisites of summons, but failing to provide any particular form for it, was conclusive of the objection at a later hearing that no summons had been served on the defendant as required by Code Civ. Proc. 1912, § 177.

2. QUO WARRANTO—STATUTE CONSTRUED TO ABOLISH QUO WARRANTO. —Code Civ. Proc. 1912, § 462, abolished writ of quo warranto and proceedings by information in the nature of quo warranto, and provided that remedies theretofore obtainable in that manner should be obtained by civil action, which under Code Civ. Proc. 1912, § 177, should be commenced by service of summons.

3. SHERIFFS AND CONSTABLES—ATTORNEY GENERAL NEED NOT OBTAIN LEAVE OF A CIRCUIT JUDGE TO BRING AN ACTION TO TRY THE TITLE TO THE OFFICE OF SHERIFF.—Under Code Civ. Proc. 1912, § 466, providing that certain actions, as an action to try title to the office

of Sheriff, may be brought by the Attorney General in the name of the State upon his own information or upon the complaint of any private party, or by a private party interested, the provision as to obtaining leave from a Circuit Judge does not apply to suits by the Attorney General, but only to actions by private parties.

4. ATTORNEY GENERAL—ATTORNEY GENERAL NEED NOT OBTAIN LEAVE OF CIRCUIT JUDGE BEFORE BRINGING ORIGINAL ACTION IN SUPREME COURT.—Code Civ. Proc. 1912, § 466, requiring that, before an action may be brought by the Attorney General in the name of the State, upon his own information or upon a complaint of any private party or by private party interested, leave must be granted by Circuit Judge, applies only to actions begun in the Circuit Court, and does not apply to an action brought in the original jurisdiction of the Supreme Court.

5. SHERIFFS AND CONSTABLES—STATUTE RELATING TO APPOINTMENT AND REMOVAL OF OFFICERS CONSTRUED TO APPLY TO SHERIFFS; "COUNTY OFFICE."—The Sheriff's office is a county office, and falls under the provision of 1 Civ. Code 1912, § 695, providing that the Governor shall appoint officers to fill any vacancy in any county office by reason of death, resignation, refusal, or neglect to qualify of the person elected or appointed thereto, expiration of the term of office, or any other cause, and that an officer so appointed may be removed by the Governor for cause.

6. SHERIFFS AND CONSTABLES—GOVERNOR HAS POWER TO REMOVE A SHERIFF APPOINTED BY HIM TO FILL A VACANCY.—Since 1 Civ. Code 1912, § 695, giving the Governor power to remove county officers appointed, and Section 1137 providing that a vacancy in the office of Sheriff shall be filled by appointment, were both originally part of Act 1878, 16 Stat. 716, and were re-enacted as parts of a consistent whole, although Section 695 was codified under "the Executive department and officers connected therewith" and Section 1137 was codified under "County officers and their compensation" under the article dealing with "Sheriffs," they are not in conflict and being construed together, the Governor has power to remove for cause one appointed by him to fill a vacancy in the office of sheriff.

7. STATUTES—BOTH OF TWO STATUTES RELATING TO SAME SUBJECT GIVEN EFFECT IF POSSIBLE BY REASONABLE CONSTRUCTION.—Both of two statutes relating to the same subject should be given effect if it can be done by reasonable construction.

8. COUNTIES—STATUTE CONSTRUED AS NOT PREVENTING REMOVAL FOR CAUSE OF COUNTY OFFICERS APPOINTED BY GOVERNOR TO FILL VACANCIES.—Cr. Code 1912, § 538, providing county officers may be tried, and if found guilty of misconduct or neglect of duty removed

from office, does not, in view of 1 Civ. Code 1912, § 695, providing that the Governor may fill vacancies in county offices and may remove for cause the officers so appointed.

9. COUNTIES—STATUTE CONSTRUED TO PREVENT REMOVAL OF COUNTY OFFICER WITHOUT TRIAL IF ELECTED BY PEOPLE OR APPOINTED FOR FULL TERM.—Cr. Code 1912, § 538, providing county officers may be tried for misconduct or neglect of duty in office, and if found guilty removed from office, applies to officers elected by the people or originally appointed for the full term.

10. SHERIFFS AND CONSTABLES—ADULTERY SUFFICIENT CAUSE FOR REMOVAL.—Under Civil Code 1912, § 695, providing that the Governor may appoint officers to fill vacancies in any county office, and may remove officers so appointed for cause, adultery is a sufficient ground for removal of a sheriff so appointed by the Governor.

Proceeding by the State, on relation of Samuel W. Wolfe, Attorney General, on complaint of C. C. King against J. Olin Sanders to determine title to the office of sheriff of Anderson County as between the parties. Judgment for plaintiff.

*Samuel M. Wolfe, Atty. Gen., Watkins & Prince,* and *Martin & Blythe,* for plaintiff.

*Bonham & Allen, A. H. Dagnall,* and *Greene & Earle,* for defendant.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

This is an action in the original jurisdiction of this Court, to determine the right and title to the office of sheriff of Anderson County as between the plaintiff, King, and the defendant, Sanders.

In January, 1919, a vacancy in the office was created by the resignation of the regularly elected incumbent, and the defendant was appointed to fill the vacancy. On January 23, 1920, after due hearing, his Excellency, the Governor, revoked the defendant's commission and removed him from the office, and appointed and commissioned the plain-

tiff, King, to fill the vacancy. King duly qualified and demanded possession of the office and the records thereof from defendant, who refused to surrender the office on the ground that the Governor was without power to remove him.

The ground of removal was the misconduct of the defendant as set forth in the following affidavit of a policeman of the city of Anderson:

"That on or about the night of October 16, 1919, while away from his home in said city, on duty, he had occasion to go to his home unexpectedly; that upon arriving there he found that his wife was not in their bedroom, but found another bedroom locked, and demanding admittance, he discovered Sheriff J. Olin Sanders in there with deponent's wife, and both admitted that they had been guilty of illicit sexual relations; that when deponent entered the room, the said Sanders covered him with a pistol, told him (deponent) if he moved he would kill him, and kept deponent covered with the pistol until he (Sanders) left the house."

On the verified complaint, the Chief Justice issued an order at chambers, filed March 6th, to the effect that the summons and petition, which was also called a complaint, be served upon defendant, and that he have 20 days in which to answer the complaint, and that the case be docketed for hearing by the Court on March 30th. When the case was called for hearing on that day, defendant appeared and objected to the jurisdiction of the Court, on the ground that only the order of the Chief Justice and the petition or complaint had been served upon him, and that these had not been served until the 10th of March, which did not give him the full time, 20 days, allowed by law for the filing of his answer or demurrer to the complaint. He further objected to the jurisdiction on the ground that no summons had been served upon him. There were other objections to the jurisdiction, but they were not considered at that time,

because the Court sustained the objection that defendant had not had the full time allowed him by law for answering or demurring to the complaint.

Thereupon an order was prepared and submitted to the Court as embodying its decision. That order provided that in order that defendant might have the full time allowed by law for pleading to the complaint, the hearing be set for April 20th. It also provided that the previous order of the Chief Justice and the petition, which was variously styled the petition and the complaint, would be regarded as the summons and complaint. Defendant's attorneys suggested no objection to the order, or to any of its provisions, and it was signed and filed on March 30th.

On call of the case, on April 20th, defendant again objected to the jurisdiction of the Court on the ground that no summons had ever been served upon him. The provision of the order of March 30th, above referred to, that the previous order of the Chief Justice and the petition would be regarded as the summons and complaint, is conclusive of that objection.

We agree with defendant that Code Civ. Proc., § 462, abolished the writ of quo warranto and proceedings by information in the nature of quo warranto, which were usually commenced by the service of a rule to show cause; and provides that the remedies theretofore obtainable in that manner should thereafter be obtained by a civil action, which the Code prescribes (Section 177) shall be commenced by the service of a summons. It follows that a summons should have been served upon defendant. *State v. Tollison,* 95 S. C., 58; 78 S. E., 521. And it appears that a summons in the usual form was prepared and issued, but for some reason unexplained it was not served. But, under the circumstances, the failure to serve it was not fatal to the jurisdiction.

The purpose of the summons is to acquire jurisdiction of the person of the defendant and to give him notice of the

action and an opportunity to appear and defend. While
Code Civ. Proc., § 178 et seq., prescribes the requisites of
the summons, it does not provide that it shall be in any
particular form. And when we consider the purpose of
the summons, in the light of the proceedings had in this
case, particularly the provisions contained in the order of
the Chief Justice and the allegations of the petition or com-
plaint, and the prayer thereof, it is clear that the objection
of defendant is purely and highly technical, and that to sus-
tain it would be to sacrifice substance to form, because the
order and the petition together contained substantially every
requisite of a summons prescribed by the Code, and de-
fendant was neither misled nor prejudiced in the slightest
by the failure to serve him with a summons in due and
regular form. While, as said, the service of a summons
is the manner prescribed by the Code, and the usual means
of acquiring jurisdiction of the person of the defendant,
and therefore it ought to be observed in practice, as ought
all other rules prescribed for an orderly system of pro-
cedure, nevertheless, it is well understood by the profes-
sion, and it has frequently been held by the Courts, that it
is not the only method by which jurisdiction of the de-
fendant may be acquired. See *Lyles v. Haskell,* 35 S. C.,
391, 14 S. E., 829. There are other reasons why this ob-
jection should not be sustained, but we deem it unnecessary
to state them.

The next objection to the jurisdiction is that Sec-
tion 466 of Code Civ. Proc. requires that, before
the action can be brought, leave must be obtained
from a Circuit Judge, which was not done. That section
provides that:

"An action may be brought by the Attorney General in
the name of the State, upon his own information, or upon
the complaint of any private party, or by a private party
interested, on leave granted by a Circuit Judge, against the
parties offending, in the following cases."

The cases specified include a case like this. Our construction of the language quoted is that, when the action is brought by the Attorney General, either upon his own information, or upon the information of a private party, leave of a Circuit Judge to bring the action is not required, because the Attorney General is the highest executive law officer of the State. He is charged with the duty of seeing to the proper administration of the laws of the State, and his duties are quasi judicial. It was therefore assumed by the Legislature that he would act fairly and impartially in the discharge of his duties, and that he would not lend his official sanction to an unwarranted action by which the right or title to an office might be brought in question. But no such presumption was indulged in favor of the action of a private party. Therefore it was provided that before a private party could bring such an action on his own initiative, he must make such a prima facie showing as would warrant a Circuit Judge in granting him leave to do so, and must obtain such leave.

Furthermore, when the remedy in question was given by means of a civil action, the Legislature contemplated that such actions would ordinarily be brought in the Circuit Court, because that Court has original jurisdiction of all civil actions, and therefore naturally the provision as to obtaining leave of a Circuit Judge was inserted, and it was intended to apply only to actions brought in the Circuit Court. It does not apply to an action brought in the original jurisdiction of the Supreme Court.

Coming to the merits, the main question is whether the Governor had authority under the law to remove defendant from office. The provisions of the Constitution and Statutes pertinent to the inquiry are as follows:

Section 27 of Article 3 of the Constitution provides:

"Officers shall be removed for incapacity, misconduct or neglect of duty, in such manner as may be provided by law,

when no mode of trial or removal is provided in this Constitution."

As no mode of trial or removal of a sheriff for the causes specified is provided in the Constitution, we must look to the Statutes to ascertain the manner of removal provided by law in such cases.

Section 695, Vol. 1, Civil Code, provides:

"The following officers shall be appointed by the Governor: 1. [Officers of the executive department.] 2. Any vacancy in a county office, by reason of death, resignation, refusal, or neglect to qualify, of the person elected or appointed thereto, expiration of the term of office, or any other cause. The person so appointed to hold his office, in all cases in which the office is elective, until the next general election and until his successor shall qualify; and in cases of offices which are originally filled by appointment and not by election, until the adjournment of the session of the General Assembly next after such vacancy has occurred. The Governor may remove for cause any person so appointed by him to fill such vacancy."

The Governor relied upon the last sentence above quoted as authority for the removal of defendant.

Section 1137 reads:

"In the event that a vacancy shall, at any time, occur in the office of sheriff in any county of this State, whether from death, resignation, disqualification, or other cause, the Governor shall have full power to appoint some suitable person, who shall be an elector of such county, and who, upon duly qualifying, according to law, shall be entitled to enter upon and hold the office until the next general election for county sheriffs, and shall be subject to all of the duties and liabilities incident to said officer, during the term of his service in said office."

The defendant contends that he was appointed under the authority conferred by this section, and that, as it con-

tains no authority to remove him, the Governor was without power to do so, under the principle of *State v. Rhame,* 92 S. C., 455, 75 S. E., 881, Ann. Cas., 1914B, 519.

Section 538 of the Criminal Code reads:

"Any county officer who is guilty of misconduct or persistent neglect of duty in office, or any person who persists in holding any county office to which he has been appointed or elected, the duties of which he has not the capacity to properly discharge, shall upon indictment and true bill after warrant, or after presentment of a grand jury and indictment and true bill thereon, be tried as for misdemeanor in office, and upon conviction, the office shall be declared vacant and the sentence shall be removal of defendant from office, and the vacancy shall be filled as when a vacancy occurs by death or resignation."

The defendant contends that, under this section, he could be removed only after trial and conviction, and relies upon the principle decided in *State v. Hough,* 103 S. C., 87, 87 S. E., 436.

The statutory provisions above quoted may seem, on first impression, to be conflicting, at least in some of their provisions. But as they are all found in the Code of 1912, which must be presumed to have been intended to be a consistent whole, it is our own duty to so construe them as to harmonize and give effect to each of them, if that can be done by any reasonable method of construction. We think it can.

But before attempting it, we dispose of it by denying defendant's contention that Section 695 is not applicable to the office of sheriff, because that is not a county office, but a State office. Without taking the time to consider the cases cited in support of that contention, and show that they are not applicable or conclusive, it is enough to say that the status of the sheriff's office as a county office is conclusively determined by numerous acts of the Legisla-

ture which so classify and refer to it. One of these will be mentioned later. The sheriff's office is a county office and falls under the provisions of Section 695.

Upon examination it will be found that the provisions of Sections 695 and 1137 have a common origin. They were taken by the codifier from the Act of 1878 (16 Stat., 716). But they were slightly changed in phraseology in codification, as they were made to relate to different officers, and offices, though the meaning was preserved. For instance, the provisions of Section 695 were inserted in Chapter 19, Vol. 1, of the Civil Code, which treats of "The Executive Department and Officers Connected Therewith." Article 2 of that chapter treats of "The Governor and Lieutenant Governor" and their powers and duties, and in that article and chapter we find Section 695, in which the codifier incorporated those provisions of the original Act which pertain to the powers of the Governor. In Chapter 20, which treats of "County Officers and their Compensation," we find in Article 2 which treats of "Sheriffs" (and classifies them as County officers), Section 1137. Considering therefore the origin of these sections and the reason and manner of their codification, and the fact that both were enacted or re-enacted at the same time as parts of a consistent whole, we see no reason to conclude that there is any conflict in their meaning. Nor is there any reason to conclude that Section 1137 is a special provision, and therefore an exception to the more general provisions of Section 695. We agree with the defendant that, if Section 1137 stood alone or could be construed as a special provision, and an exception to the general provision of Section 695, the Governor would have no power to remove a sheriff, for that power is not given in Section 1137. But, as we have seen, the two sections must be construed together, and, as there is no conflict in their meaning, it is clear that, under Section 695,

the power of removal is expressly conferred in a case like this, where the Governor has appointed one to fill a vacancy.

We next consider the provisions of Section 538 of 7, 9   the Criminal Code  and the contention that, under that section, defendant could not be removed, until after trial and conviction.   Here again we say, that if that section stood alone in the statutes, the contention would be sound.   But, as we find both that section and 695 in the Code of laws, we must give them both effect, if it can be done by a reasonable construction, for we must presume that the Legislature intended that both should have effect.   This can be done by limiting the provisions of Section 695 to the removal of officers appointed by the Governor to fill a vacancy caused by resignation, · etc., of the incumbent originally elected or appointed for a full term.   No doubt that provision was inserted and the power of removal was conferred upon the Governor because of the fact that he is politically responsible to the people for the conduct of his own appointees to fill such vacancies, and therefore it was thought that he should be invested with the power of removing such of them as might prove to be unworthy or unfaithful.   In this connection, it may be asked why should not the same power be conferred as to original appointments for a full term?   The answer is twofold:   First, very few officers are originally appointed by the Governor upon his sole responsibility for their selection.   In most instances they are appointed by him upon the recommendation of others, or of the people most directly interested after nomination by a primary election, and in many instances his appointments are subject to confirmation by the Senate; and second, because, for reasons satisfactory to the Legislature, it has seen fit to confer the power of removal only in case of appointments to fill a vacancy caused by resignation, etc., of the original incumbent.   On the other hand, Section 538 of the Criminal Code is applicable in the cases

therein mentioned of an officer who has been elected by the people, or originally appointed for a full term. And that distinguishes this case from the case of *State v. Hough,* 103 S. C., 87, 87 S. E., 436, in which we considered the attempted removal by suspension until the end of his term of a sheriff who had been elected by the people, and it was a sheriff holding by that kind of right that we said could not be removed, until after trial and conviction. This construction of the various sections harmonizes and gives effect to the provisions of each of them.

We agree with defendant that the Governor can remove only for cause; and that, of course, means a cause which is constitutionally and legally sufficient to warrant the exercise of the power. The power cannot be exercised arbitrarily or capriciously, or for a cause not specified in the Constitution. But we are not prepared to go to the extent of holding, as contended by defendant, that the cause must necessarily be official misconduct. The Constitution does not so qualify the word "misconduct." It says that officers may be removed for "misconduct." If it had been intended that they could be removed only for "official" misconduct, we presume that that intention would have been so expressed. It is conceivable that the misconduct of an officer may be of such a nature as to make his continuance in office a reproach to decent government, while his conduct might not necessarily affect the proper administration of his office. But we are not called upon to decide whether the misconduct for which a removal may be made must be official misconduct, because we agree with the Governor that the misconduct of which the defendant was found guilty was of such a nature as to affect his administration of the office, and that it was therefore official misconduct. The defendant was the highest peace officer of the county, and when he deliberately violated the sanctity of the home of another, and put himself in a situa-

tion in which he must have known that, if discovered by the outraged husband, a serious breach of the peace, if not a homicide, would almost certainly result, he was guilty of conduct unbecoming a peace officer, and that was official misconduct for which the Governor rightly removed him from office.

The judgment of the Court is that the defendant, J. Olin Sanders, is not, and has not been since the date of his removal by the Governor, the lawful sheriff of Anderson County, and that he surrender the said office and the records thereof to the plaintiff, C. G. King, upon his demand therefor, and that he pay the costs and disbursements of this action to be taxed by the clerk.