18138

C. F. MILLER, Appellant, v. Harry B. FARR, Ex-Officio Chairman
and Superintendent of Education *et al.*, Respondents

(133 S. E. (2d) 838)

*Messrs. Sinkler, Gibbs & Simons,* of Charleston, *for Appellant,*

*James W. Workman, Esq.,* of Union, *for Respondents,*

December 10, 1963.

Moss, Justice.

This action is one under the "Uniform Declaratory Judgments Act", Sections 10-2001 *et seq.,* 1962 Code of Laws. It was instituted by C. F. Miller, a resident taxpayer and qualified elector of Union Township, which said Township is located within a former school district of Union County, known as Union School District No. 11. The purpose of the action is to determine the constitutionality of an authorization granted to the County Board of Education of Union County to issue Two Hundred Thousand Dollars

of General Obligation Bonds of the School District of Union County pursuant to Act No. 667, 53 Stat. 1497, of the Acts of the General Assembly for the year 1963. This statute does not require that the question of issuing the bonds be submitted to the qualified electors of the said school district, and the appellant contends that the failure of the Act to require the submission of the question renders it violative of the provisions of an amendment to Section 5(50) of Article X of the 1895 Constitution of South Carolina, which is applicable to Union School District No. 11, such district being a part of what is now the School District of Union County.

The challenged legislation authorizes those respondents who constitute the County Board of Education of Union County, as the agency responsible for planning and constructing new facilities for the School District of Union County, to issue and sell Two Hundred Thousands Dollars of bonds of the School District of Union County for the purpose of raising moneys to construct, equip and repair public school facilities for the school district. This Act does not require that the question of the issuance of the bonds be submitted to the qualified electors and, as authorized, the respondent County Board adopted a resolution directing the issuance and sale of the bonds permitted by the said Act.

It is not disputed that as a general rule there is no constitutional provision requiring that bonds issued by School Districts in South Carolina receive voter approval prior to their issuance. *Lillard v. Melton,* 103 S. C. 10, 87 S. E. 421; *Powell v. Hargrove,* 136 S. C. 345, 134 S. E. 380. Nor is it disputed that special legislative enactments are appropriate vehicles by which the General Assembly may authorize School Districts in South Carolina to issue bonds. *State ex rel. Milford v. Brock,* 66 S. C. 357, 44 S. E. 931; *Burris v. Brock,* 95 S. C. 104, 79 S. E. 193; *Brownlee v. Brock,* 107 S. C. 230, 92 S. E. 477.

Contending, however, that the question was controlled by the provisions of an amendment to Section 5(50) of Article X ratified as of February 19, 1947, this action was instituted for the purpose of having a declaratory judgment rendered declaring Act No. 667, 53 Stats. 1497, unconstitutional. The amendment, whose interpretation is required in the disposition of this appeal, reads as follows:

"Provided, that the limitations imposed by this Section shall not apply to Union School District No. 11, Union County, South Carolina, such school district being hereby expressly authorized to issue bonds to an amount not to exceed twenty (20) per centum of the value of all taxable property in the territory embraced in said school district, as valued or assessed for taxation by the state, the proceeds of such bonds to be applied solely to the erection, equipment and maintenance of schools and school buildings in said district, and the purchase of grounds, under such restrictions and limitations as the General Assembly may prescribe, and where the question of incurring such indebtedness is to be submitted to the qualified electors of said school district, as provided in the Constitution, upon the question of bonded indebtedness."

Prior to the enactment by the General Assembly of Act No. 854 in 1952, 47 Stats. 2104, now codified with amendments as Sections 21-4151 *et seq.*, Code of 1962, Union County had been divided into a number of school districts, one of which was known as Union School District No. 11. By the aforesaid Act of 1952, all of the then existing school districts of Union County were consolidated into a single school district. By amendment the territorial unit resulting from the consolidation of the then existing school districts has now been designated as "The School District of Union County" and is a single school district which purports to have the right to exercise the authorization set forth in Act No. 667, heretofore referred to, without regard to the restrictive provisions imposed upon the former school district

known as Union School District No. 11, by the above amendment to Section 5(50) of Article X of the Constitution.

The appellant contends that notwithstanding the termination of the corporate existence of Union School District No. 11, those residing in the area formerly constituting such district are, by reason of the special amendment relating to that school district, entitled to a special constitutional privilege which prevents any public agency of whatever nature operating the public school system within such geographical area from incurring bonded debt without the favorable result of an election duly called and properly held. Thus, the appellant argues that the Act, by which all former school districts in Union County were consolidated into a single school district, was subject to the constitutional limitation or condition that it might not incur bonded debt unless the question of such debt was duly submitted and favorably voted upon.

It does not appear that the particular amendment with which we are concerned has been subjected to interpretation by this Court; however, its language is by no means unusual, and in fact it is merely one of many amendments which have been ratified as amendments to Section 5 of Article X. Many of these have been before this Court for consideration, as will be noted by the decisions of this Court in the cases of *McColl v. Marlboro Graded School District,* 143 S. C. 120, 141 S. E. 265; *Smith v. Littlejohn,* 151 S. C. 137, 148 S. E. 719; and *Middleton v. Littlejohn,* 179 S. C. 88, 183 S. E. 593. These cases hold that insofar as old Union School District No. 11 was concerned, it had been given by this special amendment a new special debt limitation under which no bonds might be issued unless they were voted upon favorably.

The question for decision here is basically a question of legislative intent. Constitutional amendments originate in the form of resolutions of the General Assembly, which proposes specific changes in the constitution. They are sponsored by members of the General Assembly and become effective through legislative processes. Hence,

when construing constitutional amendments, the Court applies rules similar to those relating to the construction of statutes, in its effort to determine the intent of its framers and of the people who adopted it. *Reese v. Talbert,* 237 S. C. 356, 117 S. E. (2d) 375; *Knight v. Hollings,* 242 S. C. 1, 129 S. E. (2d) 746. Thus we must ascertain if it was intended by the amendment that its limitations should continue following the destruction of the entity for which it was adopted and to which it applied. If such was the intent, then the appellant must prevail. If not, affirmance is required.

Examination of the subject constitutional amendment indicates that it sought to accomplish two purposes, to wit: increasing the debt limitation from eight per cent to twenty per cent and imposing the condition that all bonded debt to be incurred by Union School District No. 11 receive voter approval. The amendment does not attempt to impose these objectives on any other school district in Union County except School District No. 11, nor does its language indicate any intent that it apply to any agency other than the said School District.

This Court has had occasion to consider the legal consequences of a legislative enactment consolidating several existing school districts into a single consolidated school district. In the case of *Walker v. Bennett,* 125 S. C. 389, 118 S. E. 779, there arose for decision the validity of legislation consolidating five then existing school districts of Greenville County into a single school district, and the further question of whether the new consolidated district had its own eight per cent debt limitation in the face of facts which showed that one of the five constituent school districts had, on the occasion of the consolidation, bonded debt in excess of its eight per cent limitation.

Former School District 8E of Greenville County then had outstanding $24,000 of bonds. Due to decreases in its assessed valuation, $24,000 was a sum in excess of the aggregate of bonded debt permitted to such school district by the eight per cent limitation which was applicable. Hence, if it

were decided that the debt limitation applicable to each of the five constituent school districts continued to exist, it became óbvious that no further bonded debt could be imposed upon School District 8E, since it already had bonded debt in excess of that permitted by Section 5, Article X of the Constitution This Court said:

"When the consolidation district was formed, the inevitable result of the formation was to destroy the existence of the five constituent school districts in so far as owning separate property and owing separate debts was concerned. The purpose of the act was to unite the territory under one school management, which necessarily required that management to exercise control of all the properties of the constituent districts and make the consolidated district the unit for the purpose of owning property, holding assets, paying liabilities and providing unified system of instruction."

And upon the subject of the constitutional limitation applicable, this Court said:

"Upon the consolidation of the districts by the legislative act the entity of the districts as such was destroyed. So far as the fiscal authority of the constituent districts was concerned that was absolutely destroyed by the consolidation. The result was, however, not that the debts were not still subsisting obligations, but that they became obligations of the consolidated district, which likewise succeeded to the property of the constituent districts. The result is that the bondholders of the constituent districts have as security for their debts, not the separate property of the old school districts, but the entire property of the consolidated districts. It results from this holding that it is immaterial what the indebtedness of school district 8E is, as that indebtedness becomes the debt of Parker school district, and is payable out of the assets of the entire district."

The principles of *Walker v. Bennett, supra,* have been cited with approval in the case of *Nesbitt v. Gettys,* 219 S. C. 221, 64 S. E. (2d) 651, and *City of Columbia v. Sanders,*

231 S. C. 61, 97 S. E. (2d) 210. The authorities collected in 121 A. L. R. 826, support the rulings of the *Walker case*. See also 103 A. L. R. 154.

It is clear that under our Constitution school districts have no permanent existence inasmuch as the General Assembly has plenary power to create new school districts or to consolidate existing school districts with other school districts.

It must be presumed that those who brought about the adoption of this constitutional amendment were familiar with this rule and of the Court's holdings in the *Walker case,* and if it had been their intent to give to this constitutional amendment the effect argued for by the appellant, they would most surely have made it clear that the provision requiring voter approval would be applied, not only to the then existing School District No. 11, but to any district or political entity into which it might thereafter be merged.

It is also significant that the amendment with which we are concerned amended Article X, Section 5, of the Constitution, which merely relates to constitutional debt limitations and does not relate to the creation, existence, consolidation or dissolution of school districts or any political subdivision. This fact clearly indicates that the purpose of the amendment was not to perpetuate former School District No. 11 as a political or fiscal entity, but merely to affect the debt limitation which would otherwise have applied under Article X, Section 5, to former School District No. 11. It is obviously necessary to construe a constitutional amendment "with particular regard to the provision that it purports to amend", *Knight v. Hollings,* 242 S. C. 1, 129 S. E. (2d) 746, in order that its basic intent can be established.

Actually the results sought by the appellant are incongruous inasmuch as he recognizes that the act of consolidation does not carry to the consolidated school district the twenty per cent debt limitation given to Union School District No.

11 by Section 5 (50), of Article X, of the Constitution. He seeks to extend the voter approval imposed by the amendment to the normal debt limitation resulting from the application of Section 5 of Article X to the consolidated district.

The situation here is totally different from that involved in the case of *Conner v. Charleston High School District,* 191 S. C. 412, 4 S. E. (2d) 431. The question in that action related exclusively to the constitutionality of a 1939 Act of the General Assembly, which undertook to authorize an existing school district, under a new name, to issue bonds in excess of the amount specifically named in a constitutional provision effecting the same area, the same public officials and the same objective. The Court struck down the Act on the ground that such "was passed with the intent and purpose of circumventing the constitutional amendment applicable to Charleston School District." The Court restricted its holding in the *Conner case* to the facts of that case which are totally different from those involved here.

We conclude, as did the Trial Judge, that Article X, Section 5 (50) of the Constitution is not applicable to the school district of Union County and that it may, as authorized by the 1963 Act, issue bonds of said school district under the conditions and limitations imposed by that Act.

The exception of the appellant is overruled and the judgment of the lower Court is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.