## 20463

STATE of South Carolina ex rel. Daniel R. McLEOD, Attorney General, Plaintiff. v. James B. EDWARDS, Governor of the State of South Carolina, as ex officio Chairman and member of the State Budget and Control Board, Grady L. Patterson, Jr., Treasurer of the State of South Carolina, Earle E. Morris, Jr., Comptroller General of the State of South Carolina, Rembert C. Dennis, Chairman of the Finance Committee of the South Carolina Senate and Tom G. Mangum, Chairman of the Ways and Means Committee of the South Carolina House of Representatives, as ex officio members of the State Budget and Control Board, Defendants.

(236 S. E. (2d) 406)

*Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Deputy Atty. Gen., and Karen LeCraft Henderson, Asst. Atty. Gen.,* of Columbia, *for Plaintiff,*

*Huger Sinkler, of Sinkler, Gibbs and Simons,* Charleston, *for Defendants,*

*Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Deputy Atty. Gen.,* and *Karen LeCraft Henderson, Asst.*

*Atty. Gen.,* of Columbia, *for Plaintiff, in Reply,* 

July 12, 1977.

LEWIS, Chief Justice:

This action in the original jurisdiction of the Court involves an attack upon the constitutionality of the legislation creating the State Budget and Control Board (The Board).

The Board is comprised of the Governor, the State Treasurer, the Comptroller General, the Chairman of the Senate Finance Committee, and the Chairman of the Ways and Means Committee of the House, all ex officio members. Section 1-351, 1962 Code of Laws. It is an executive body dealing primarily with the fiscal affairs of the State government

and, pursuant to Code Section 1-352, performs its functions through three divisions, to wit: the Finance Division, the Purchasing and Property Division, and the Division of Personnel Administration.

The constitutional attack is two-fold. First, it is argued that the inclusion on The Board of the Chairman of the Senate Finance Committee and the Chairman of the House Ways and Means Committee (members of the Legislative Branch of the government) violates the provisions of Article I, Section 8 of the South Carolina Constitution, which provides that: "In the government of this State, the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other." Secondly, it is contended that membership of the two legislators on The Board usurps the executive powers of the government in violation of Article IV, Section 1, which states that "the supreme executive authority of this State shall be vested in . . . 'The Governor of the State of South Carolina.' "

We are convinced that established precedent requires rejection of the contention that inclusion of the two legislators on the membership of The Board violates the separation of powers provision. *Harper v. Schooler,* 258 S. C. 486, 189 S. E. (2d) 284 (1972); *Mims v. McNair,* 252 S. C. 64, 165 S. E. (2d) 355 (1969); *Elliott v. McNair,* 250 S. C. 75, 156 S. E. (2d) 421 (1967).

Each of the three above cited cases involved a constitutional challenge of particular bond issues.

In *Elliott* the court considered the membership of The Board in the light of the constitutional provisions against dual office holding and requiring separation of powers. The issues were summarized as follows:

The Act provides that no bond shall be issued by the County Board without the approval of the State Budget and

Control Board of South Carolina. The Chairman of the Senate Finance Committee and the Chairman of the House Ways and Means Committee are members of the State Board. The appellant contends that the State Board, of whom the foregoing are members, is given powers which violate the provisions of Article II, Section 2, and Article I, Section 14, of the Constitution. The first of these sections forbids dual office holding and the second section requires separation of powers.

In answer to the stated contentions, the *Elliott* court held that the composition of The Board did not violate either the dual office holding or separation of powers provisions of the State Constitution. The fact, argued by petitioner, that the court discussed mainly the dual office holding attack in no way impinges upon the authority of *Elliott* to sustain the constitutionality of The Board against the contention that it violates the separation of powers doctrine. This is made clear by subsequent decisions of the court, particularly *Mims v. McNair, supra.*

In *Mims,* it was contended that the Act in question violated Article I, Section 14, now Article I, Section 8, of the Constitution because the composition of The Board included the Chairman of the Finance Committee and the Chairman of the Ways and Means Committee. The court rejected the foregoing contention solely upon the authority of the prior decision in *Elliott.* In doing so, the court stated:

It is further contended that the Bond Act violates the constitutional requirement for the separation of the legislative and executive functions as prescribed by Article I, Section 14, in that the two members of the State Board, which is the body authorized by the Bond Act to issue the bonds, are also members of the General Assembly, to wit: The Chairman of the Senate Finance Committee and the Chairman of the Ways and Means Committee. There is no merit in this contention. *Elliott v. McNair,* 250 S. C. 75, 156 S. E. (2d) 421.

Finally, as late as 1972, in the case of *Harper v. Schooler, supra,* 258 S. C. 486, 189 S. E. (2d) 284, this Court upheld the constitutionality of The Board against identical challenges as those presented in this case. The court's statement of the issues and its rulings thereon in *Harper* were as follows:

The *Elliott* case is likewise controlling adverse to the plaintiff's contention that the delegation of powers to the State Budget and Control Board violates the provisions of Article II, Section 5 and Article I, Section 14 of the South Carolina Constitution on the alleged grounds that dual office holding results and executive functions are devolved upon members of the General Assembly. . . .

If doubt existed before, certainly none could validly exist after *Mims* that this Court had construed the separation of powers clause as permitting membership of the two legislative members on The Board.

Subsequent to the decisions in *Mims* and *Elliott,* the General Assembly, by Joint Resolution, proposed a new Article I to the South Carolina Constitution, which sets forth in Section 8 thereof the precise words which formerly appeared in Section 14 of the previous Article I (The separation of powers provision considered in the cited cases). 56 Stat. 2684, Joint Resolution No. 1268, April 21, 1970. This Article was subsequently approved by the people.

Defendants correctly assert that this resubmission of the separation of powers clause, in the exact language it had previously existed, expressed the contentment of the General Assembly, not merely with the separation of powers principle as originally expressed, but with those words as then judicially construed by the Supreme Court of South Carolina.

It must be presumed that the General Assembly, in readopting the separation of powers clause in its previous form, were familiar with this court's holdings in *Mims* and *Elliott* and that the words of Section 8 of Article I had been construed to mean that the Chairman of the Senate Finance

Committee and the Chairman of the House Ways and Means Committee could be lawfully included in the composition of The Board. If it had been the intent of the General Assembly to exclude the foregoing legislative members, certainly Section 8 would have been rewritten in such fashion as to override the prior decisions of this Court construing the language as permitting such membership. *Miller v. Farr,* 243 S. C. 342, 133 S. E. (2d) 838.

It is a well established rule that "framers of a new Constitution who adopt provisions contained in a former Constitution to which a certain construction has been given are presumed as a general rule to have intended that these provisions should have the meaning attributed to them under the earlier instrument." 16 Am. Jur. (2d), Constitutional Law, Section 80. 16 C. J. S. Constitutional Law § 35.

The foregoing principle will be applied in the absence of anything to indicate that a meaning different from the accepted construction was intended. Nothing appears in this case to indicate that, in readopting the precise language of Section 14, as Section 8 in new Article I, there was any intent to ascribe to it a meaning different from the prior judicial construction placed upon it by this Court. Therefore, the prior judicial construction of the precise language readopted in the separation of powers clause (Section 8 of Article I), permitting inclusion of the Chairman of the Senate Finance Committee and the Chairman of the House Ways and Means Committee as members of The Board, is controlling as to its present meaning, regardless of what our views might have been as a matter of first impression.

We therefore adhere to the prior holding in the *Mims and Elliott* cases to the effect that the present composition of The Board does not violate the separation of powers principle.

While the foregoing disposes of the present separation of powers issue, we think that an examination of the principle, as applied to the present facts, reveals the basis for the result reached in our prior decisions. Important in this case is the

fact that the General Assembly has been careful to put the legislative members in a minority position on The Board. The statutory composition of The Board does not represent an attempt to usurp the functions of the executive department, but apparently represents a cooperative effort by making available to the executive department the special knowledge and expertise of the chairman of the two finance committees in the fiscal affairs of the State and the legislative process in general. We view the ex officio membership of the legislators on The Board as cooperation with the executive in matters which are related to their function as legislators and not usurpation of the functions of the executive department. The Supreme Court of Kansas recently expressed this view in *State ex rel. Schneider v. Bennett,* 219 Kan. 285, 547 P. (2d) 786, 792, as follows:

The separation of powers doctrine does not in all cases prevent individual members of the legislature from serving on administrative boards or commissions created by legislative enactments. Individual members of the legislature may serve on administrative boards or commissions where such service falls in the realm of cooperation on the part of the legislature and there is no attempt to usurp functions of the executive department of the government.

Our attention is called, however, to the line of cases represented by *Bramlette v. Stringer,* 186 S. C. 134, 195 S. E. 257; *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. (2d) 88; and *Dean v. Timmerman,* 234 S. C. 35, 106 S. E. (2d) 665; as authority for holding that the composition of The Board violates the separation of powers doctrine. We do not view these cases as inconsistent with our holdings in *Mims, Elliott,* and *Harper, supra.*

In *Bramlette* and *Dean,* the executive or administrative function was wholly usurped by the legislative branch; and in *Ashmore* there was no proper ex officio relationship between the legislative duties and the functions assumed for the District. However, as previously pointed out, the minority

legislative representation on The Board in this case was apparently intended to allow the chairman of the two committees to cooperate with the executive branch in action reasonably incidental to their legislative duties. These considerations were lacking in *Bramlette, Ashmore,* and *Dean.*

The argument that the composition of The Board usurps the executive powers of the Governor in violation of Article IV, Section 1, is also without merit.

The constitutional powers granted to the Governor are set forth in Article IV, Sections 13, 14, 15, 17, 19, and 21. None of these powers are limited in any way by the composition of The Board. Plaintiff has pointed out, in his brief, the large increase in the duties and functions placed in The Board since its creation. However, we are concerned here only with the constitutionality of its composition and not with the wisdom of the enactments increasing its functions.

The composition of the State Budget and Control Board has been sanctioned as lawful for a long number of years by legislative enactments, judicial construction, the executive, and the people. We find no sound basis to justify upsetting this long sanction and acceptance of The Board as a vital part of the machinery of the government of this State. The complaint is accordingly dismissed.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.